IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: ) <br> ) <br> LEONARD MARSH & LUNYE MARSH, ) <br> ) <br> Debtors. ) <br> _____ ) <br> ) <br> LEONARD MARSH & LUN YE MARSH, ) <br> ) <br> Appellants, ) <br> ) <br> v. ) <br> ) <br> UNITED STATES DEPARTMENT OF ) <br> HOUSING & URBAN DEVELOPMENT, ) <br> ) <br> Appellee. ) | No. 12 C 2714 <br><br> Appeal from: <br> U.S.B.C. No. 10-45569 <br> Adversary No. 11-227 |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

Debtors Leonard Marsh and LunYe Marsh appeal from the judgment of the bankruptcy court in an adversary proceeding denying their attempt under 11 U.S.C. § 506(d) to "strip off" a junior lien on their residence held by the United States Department of Housing and Urban Development ("HUD"). The bankruptcy court's judgment was based on its determination that the Marshes' residence should be valued as of the date of bankruptcy plan confirmation. This court believes that determination was not correct in the circumstances of this case. Accordingly, the judgment of the bankruptcy court is reversed, and the case is remanded to the bankruptcy court for further proceedings consistent with this opinion.

BACKGROUND

The Marshes, who are husband and wife, filed for bankruptcy protection under Chapter 13 of the United States Bankruptcy Code on October 12, 2010. (Bankr. Dkt. No. 1.[1]) Their petition listed total assets of $94,925, including their home at 7701 S. Paxton Ave. in Chicago valued at $90,000. (*Id.* at 6, 8.) They also listed total liabilities of $158,294, including a senior mortgage on their home in the amount of $113,438 and a junior mortgage owned by HUD in the amount of $29,312. (*Id.* at 6, 14.) On December 15, 2010, the Marshes filed a modified Chapter 13 bankruptcy plan which would allow them to retain their home. (Bankr. Dkt. No. 26, at 5.) The modified plan proposed "stripping off" HUD's junior mortgage by treating it as an unsecured claim under 11 U.S.C. § 506. (*Id.*) The modified plan has not yet been confirmed by the bankruptcy court, and a confirmation hearing is scheduled for September 17, 2012. (Bankr. Dkt. No. 57.)

On January 20, 2011, the Marshes filed an adversary complaint under Bankruptcy Rule 7001(2), which allows an adversary proceeding "to determine the validity, priority, or extent of a lien." (Adv. Dkt. No. 1.) The adversary complaint alleged that the fair market value of the Marshes' home at the time of the bankruptcy petition was $90,000, and that the home was thus inadequate to secure the senior mortgage. (*Id.* ¶¶ 7, 8.) According to the Marshes, HUD's junior mortgage was thus entirely unsecured, and should be void under 11 U.S.C. § 506(d). (*Id.* ¶ 11.)

At trial, the Marshes presented evidence that the value of their home was $90,000 as of the petition date, October 12, 2010. (Adv. Dkt. No. 15, at 3.) The court held, however, that the value of

---

[1] In this opinion, this court will refer to documents in the docket of the Marshes' general bankruptcy proceeding (No. 10-bk-45569) as follows: (Bankr. Dkt. No. __.). This court will also refer to documents in the docket of the adversary proceeding between the Marshes and HUD (No. 11-ap-227) as follows: (Adv. Dkt. No. __.).

the property must be determined "as of the effective date of the plan as required by 11 U.S.C. § 1325(a)(5)(B)(ii)." (Adv. Dkt. No. 21.) Because the Marshes had presented no evidence with respect to the value of the property at that date, the bankruptcy court held that they had not met their burden of establishing that the value of the property was insufficient to secure HUD's junior mortgage. (*Id.*) The bankruptcy court thus entered judgment in favor of HUD. (Adv. Dkt. No. 22.) On February 25, 2012, the bankruptcy court denied the Marshes' motion to alter or amend the judgment (Adv. Dkt. No. 29), and this appeal followed.

## ANALYSIS

A federal district court reviews a bankruptcy court's factual findings for clear error, and reviews the bankruptcy court's legal conclusions de novo. *Bielecki v. Nettleton*, 183 B.R. 143, 145 (N.D. Ill. 1995). The only issue here is purely legal: as of what time should the bankruptcy court value the Marshes' residence under 11 U.S.C. § 506? HUD defends the bankruptcy court's holding that the valuation should occur as of plan confirmation, while the Marshes contend that the valuation should occur as of the filing of the bankruptcy petition.

> Section 506(a) provides that:
>
> An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . ., and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

After the bifurcation of a claim into secured and unsecured portions under § 506(a), "to the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void."

11 U.S.C. § 506(d). For the purposes of this appeal,[2] that provision allows a debtor to "strip off," or void, any junior lien on property that is entirely unsecured by the value of the property.[3]

The Supreme Court provided guidance on the valuation mechanism of § 506(a) in *Associates Commercial Corp. v. Rash*, 520 U.S. 953 (1997). The Court established there that § 506(a) does not require that the same valuation procedure be used in each case. Instead, as the second sentence of

---

[2] The Supreme Court has held that § 506(d) does not authorize lien stripping in Chapter 7 proceedings. *Dewsnup v. Timm*, 502 U.S. 410, 416-17 (1992). Because *Dewsnup* was expressly limited to the Chapter 7 context, *id.*, however, most courts have allowed lien stripping in Chapter 11, 12, and 13 proceedings. *See* 4 *Collier on Bankruptcy* ¶ 506.06[1][c] (16th ed. rev. 2012) (citing cases). The Seventh Circuit has not yet opined on the question. *In re Harvey*, 213 F.3d 318, 320-21 (7th Cir. 2000) ("Whether lien stripping over a creditor's objection is permitted prior to the completion of a Chapter 13 plan remains an open question."). Even if lien stripping is permitted in Chapter 13, it is likely that it is permitted only at the time of plan confirmation under § 1322(b)(2) (allowing a plan to modify a secured claim) or § 1325(a)(5) (requiring the plan to provide for payment of only "the allowed amount of" a secured claim), rather than under § 506(d). *See* 4 *Collier on Bankruptcy* ¶ 506.06[1][c] ("In general, the decisions that hold that lien stripping is available in the chapter 11, 12 and 13 context are of two types. One group finds that lien stripping is available as provided in various Code provisions other than section 506(d). The second group finds that lien stripping is authorized by section 506(d) itself. The first group is correct; the second is not." (footnotes omitted)). Nonetheless, neither party contends that lien stripping is unavailable in Chapter 13 proceedings, or that it is unavailable under §506(d) and thus cannot occur until plan confirmation. Accordingly, any objection to lien stripping under § 506(d) in this Chapter 13 proceeding is waived.

[3] In *Nobleman v. American Savings Bank*, the Supreme Court held that 11 U.S.C. § 1322(b)(2) prohibits "stripping down" (reducing to the value of the collateral) a partially secured mortgage on a Chapter 13 debtor's principal residence. 508 U.S. 324 (1993). Section 1322(b)(2) prohibits the modification of any "claim secured only by a security interest in real property that is the debtor's principal residence." Most courts, however, (although not yet the Seventh Circuit) have held that § 1322(b)(2) does not prohibit stripping off a completely unsecured junior mortgage on the debtor's principal residence, on the theory that the holder of such a mortgage does not have a "secured claim" at all after the operation of § 506(a), and that § 1322(b)(2) thus does not apply. *Zimmer v. PSB Lending Corp. (In re Zimmer)*, 313 F.3d 1220 (9th Cir. 2002); *Lane v. W. Interstate Bancorp (In re Lane)*, 280 F.3d 663 (6th Cir. 2002); *Pond v. Farm Specialist Realty* (*In re Pond*), 252 F.3d 122 (2d Cir. 2001); *Tanner v. FirstPlus Fin., Inc. (In re Tanner)*, 217 F.3d 1357 (11th Cir. 2000); *Bartee v. Tara Colony Homeowners Ass'n (In re Bartee)*, 212 F.3d 277 (5th Cir. 2000); *McDonald v. Master Fin., Inc. (In re McDonald)*, 205 F.3d 606 (3d Cir. 2000). In any case, no party contends that § 1322(b)(2) prohibits stripping off the junior lien on the Marshes' principal residence, so any objection on that ground is waived.

§ 506(a) explains, the value "shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property."[4] Accordingly, the proper method of valuation will vary depending on two things. The first is the proposed disposition or use of the property, such as whether the debtor proposes to retain the property or to surrender it to the creditor. *See id.* at 962 ("[T]he 'proposed disposition or use' of the collateral is of paramount importance to the valuation question."). Second, the proper method of valuation will turn on the purpose of the valuation. In *Rash*, for example, the purpose of the valuation was to determine if the debtor's bankruptcy plan should be confirmed under the "cram down" provisions of § 1325(a)(5)(B). *See id.* at 960 ("*In such a "cram down" case*, we hold, the value of the property (and thus the amount of the secured claim under § 506(a)) is the price a willing buyer in the debtor's trade, business, or situation would pay to obtain like property from a willing seller." (emphasis added)); *see also id.* at 966 (Stevens, J., dissenting) ("In this context, the 'purpose of the valuation' is determined by 11 U.S.C. § 1325(a)(5)(B)."). As one treatise explains:

> As explained in *Rash*, before selecting an appropriate valuation standard, the court must first identify the purpose of the valuation. . . . [E]stablishing the purpose of the valuation is necessary to fix the specific context in which the valuation is to be conducted. In general, the purpose of the valuation is to be determined in light of the particular proceeding or Code provision to which the valuation pertains, such as a request for adequate protection under section 363(e), a motion for relief from stay under section 362(d), or the determination of the amount of a secured creditor's claim for purposes of confirming a plan.

4 *Collier on Bankruptcy* ¶ 506.03[7]. It is important to note that this evaluation of context does not extend to "allowing use of different valuation standards based on the facts and circumstances of

---

[4] Section 506(a) also provides that the value shall be determined "in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest." That provision addresses the stage of the proceedings at which the bankruptcy court should determine the value of the property, however, not the time as of which the property should be valued.

individual cases," but instead merely ensures that the proper valuation procedure will vary categorically depending on the role that the valuation inquiry plays in the bankruptcy process. *Rash*, 520 U.S. at 964 n.5.

In this case, the proposed disposition or use of the property does not provide any particular guidance about the time as of which the collateral should be valued. HUD contends that the Marshes' proposed use (the retention of the property for use as a residence) cannot begin until the modified Chapter 13 plan is confirmed, and that the court should determine the property's value as of the confirmation date. But the Marshes have been using the property as a residence both before the bankruptcy and throughout the bankruptcy proceedings, and the Marshes' plan calls for them to continue to use the property as a residence through plan confirmation and beyond. The proposed use of the property is thus consistent with valuation as of either the time of plan confirmation or the petition date.

It is more fruitful in this context to consider the purpose of the valuation in the bankruptcy process. The purpose of the valuation here is to resolve an adversary proceeding brought by the debtors under Bankruptcy Rule 7001(2) "to determine the validity, priority, or extent of" a junior lien on the debtors' residence that the debtors contend should be stripped off as wholly unsecured under § 506(d).[5] Consideration of that purpose leads the court to state the obvious: the adversary

---

[5] It is unclear whether it is appropriate to strip off a wholly unsecured mortgage lien in an adversary proceeding, rather than at the time of plan confirmation. *Compare In re Black*, No. 01-11520, 2002 WL 31719957 (Bankr. N.D. Ind. Sept. 23, 2002) (allowing strip off of wholly unsecured mortgage lien during confirmation process), *with Waters v. The Money Store (In re Waters)*, 276 B.R. 879 (Bankr. N.D. Ill. 2002) (allowing strip off of wholly unsecured mortgage lien during an adversary proceeding). At least one court has held that stripping off a wholly unsecured junior lien does not involve determining the "validity, priority, or extent" of the lien, and that it thus cannot be accomplished in an adversary proceeding under Bankruptcy Rule 7001(2). *In re King*, 290 B.R. 641, 647 (Bankr. C.D. Ill. 2003) ("[T]he term 'validity' means the existence or legitimacy

proceeding is not part of the plan confirmation process, so the bankruptcy court could not possibly determine the value of the collateral as of the time of plan confirmation. For example, in this case the bankruptcy court entered judgment on the adversary proceeding on December 15, 2011 (Adv. Dkt. No. 21), but a hearing on plan confirmation is not scheduled to occur until September 17, 2012 (Bankr. Dkt. No. 57). Plainly, the court could not have determined on December 15, 2011, the value of the Marshes' residence on September 17, 2012.

Of course, in this case the bankruptcy court "has been awaiting the outcome of th[e] adversary proceeding to determine the value of [HUD]'s claim" before proceeding with plan confirmation. (Bankr. Dkt. No. 57.) Accordingly, perhaps the bankruptcy court expected that plan confirmation would swiftly follow the resolution of the adversary proceeding, and that the value of the Marshes' residence at the time of the adversary proceeding would essentially match its value at plan confirmation. Plan confirmation will not always swiftly follow the resolution of an adversary proceeding, however, as there are a variety of matters that may delay a plan confirmation hearing. Accordingly, a bankruptcy court will be unable to provide a proper value of collateral as of the date of plan confirmation when the purpose of the valuation is the resolution of an adversary proceeding.

---

of the lien itself, 'priority' means the lien's relationship to other claims to or interests in the collateral, and 'extent' means the scope of the property encompassed by or subject to the lien. Here, the DEBTORS are not alleging that [the junior lien] is invalid, there is no dispute that [the senior lien] has first priority, and the DEBTORS are not disputing that [the junior lien] encumbers their residential real estate and no other property."). The likelihood that § 506(d) does not support lien stripping (which then could be accomplished only under provisions related to plan confirmation) further supports the argument that lien stripping can only occur at plan confirmation. *See supra* note 2. Finally, § 506(a)'s provision that the value of the collateral shall be determined "in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest" also suggests that stripping off can occur only as part of the confirmation process. Nonetheless, no party here objects to stripping off a wholly unsecured junior lien in an adversary proceeding under Bankruptcy Rule 7001(2), so any objection is waived.

Because the Supreme Court has instructed that the method of valuation under § 506(a) should be determined categorically, *Rash*, 520 U.S. at 964 n.5, that means that valuation cannot occur as of plan confirmation when the purpose of the valuation is to resolve an adversary proceeding.

Section 1325(a)(5)(B)(ii), on which the bankruptcy court based its holding (Adv. Dkt. No. 21), is not to the contrary. Section 1325(a)(5)(B)(ii) provides that, before confirmation, the bankruptcy court must ensure that the proposed plan provides that "the value, as of the effective date of the plan, of property to be distributed under the plan on account of [a secured] claim is not less than the allowed amount of such claim." The bankruptcy court held that the reference to "the effective date of the plan" required the court to value the secured claim (and thus also the collateral securing it) as of that date. That determination raises two problems. First, as mentioned above, the adversary proceeding here is distinct from plan confirmation, so § 1325, which provides requirements for plan confirmation, does not even apply. Secondly, the phrase "as of the effective date of the plan" in § 1325(a)(5)(B)(ii) modifies the value of the property to be distributed under the plan, not the allowed amount of the secured claim. Thus, § 1325(a)(5)(B)(ii) instructs the bankruptcy court to determine the net present value, as of the effective date of the plan, of all future payments to be made under the plan because of the secured claim, and to compare it to the allowed amount of the secured claim. It does not instruct the bankruptcy court about how to determine the allowed amount of the secured claim. Accordingly, § 1325(a)(5)(B)(ii) does not require valuation of collateral as of the date of plan confirmation even in confirmation hearings, and § 1325(a)(5)(B)(ii) does not require valuation of collateral as of the date of the plan confirmation in an adversary proceeding that occurs prior to plan confirmation.

There remains the possibility that the valuation of the collateral should occur as of the time

of the final judgment resolving the adversary proceeding. The bankruptcy court did not indicate in its determinations that it considered that possibility, however, nor does HUD defend it in its briefing. This court is hesitant to address the question of whether valuation should occur as of the petition date or as of the date of the judgment resolving an adversary proceeding without proper briefing. Accordingly, this court will remand the case to allow the experienced and astute judge of the bankruptcy court assigned to this case to make that determination in the first instance.

The court emphasizes the limited nature of this holding that, in the circumstances of this case, valuing collateral as of plan confirmation is not correct. This holding should apply only to proceedings in the same procedural posture as the case here: adversary proceedings brought by a debtor to strip off a junior lien on the debtor's residence under § 506(a) & (d) (proceedings the propriety of which is in some doubt, *see supra* notes 2 & 5). This court's holding in this case should not apply to the valuation of collateral in other contexts in the bankruptcy code, which may present other considerations.

## CONCLUSION

For the reasons explained above, the judgment of the bankruptcy court is reversed and the case is remanded to the bankruptcy court for further proceedings consistent with this opinion.

ENTER:

*James F. Holderman*

JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: July 19, 2012